UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20220-MOORE/Elfenbein

UNITED STATES OF AMERICA,

v.

ERIK HADAD,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS, ECF NO. [29]**

**THIS CAUSE** is before the Court on Defendant, Erik Hadad's ("Hadad") "Motion to Dismiss (Unconstitutional as applied)" (the "Motion"), ECF No. [29]. The Honorable K. Michael Moore referred this case to me to take all necessary and proper action as required by law and/or to submit a Report and Recommendation regarding all matters and pre-trial motions, except for motions for continuance of trial. *See* ECF No. [10]. For the reasons explained below, I respectfully **RECOMMEND** that the Motion, **ECF No. [29]**, be **DENIED**.

I.    **BACKGROUND**

A grand jury returned an indictment charging Hadad with carjacking, in violation of 18 U.S.C. § 2119(1), and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *See* ECF No. [3]. Starting with Count 1, the Indictment alleges as follows:

> On or about December 19, 2023, in Miami-Dade County, in the Southern District of Florida, the defendant,
>
> **ERIK HADAD**,
>
> with the intent to cause death and serious bodily harm, did take, and attempt to take, a motor vehicle that had been transported, shipped, and received in interstate and

>foreign commerce, that is, a Honda Accord, from the person and presence of another, that is, VICTIM 1, by force and violence, and by intimidation, in violation of Title 18, United States Code, Sections 2119(1) and 2.

*Id.*

With regard to Count 2, the Indictment alleges:

>On or about December 19, 2023, in Miami-Dade County, in the Southern District of Florida, the defendant,
>
>**ERIK HADAD**,
>
>did knowingly use and carry a firearm during and in relation to a crime of violence, and did knowingly possess a firearm in furtherance of a crime of violence, an offense for which the defendant may be prosecuted in a court of the United States, that is, a violation of Title 18, United States Code, Section 2119(1), as charged in Count 1 of this Indictment, in violation of Title 18, United States Code, Section 924(c)(l)(A).
>
>Pursuant to Title 18, United States Code, Section 924(c)(l)(A)(ii), it is further alleged that the firearm was brandished.

*Id.*

In his most recent Motion, Hadad seeks to dismiss the Indictment a second time but on new grounds. This time, Hadad argues that the statute is unconstitutional as applied to him, citing to the doctrine of vagueness and the rule of lenity. *See* ECF No. [29] at 6-10. In short, Hadad contends that the federal carjacking statute found at 18 U.S.C. § 2119 should not be applied to a circumstance involving repossession of a vehicle and that the Government has stretched the statute too far by applying it a circumstance in which Hadad lawfully had the right to take possession of the vehicle. *Id.* at 7-8. According to Hadad, it then follows that the statute as applied to the unique facts of his case is unconstitutional and violates his right to due process. *Id.* at 9 ("Pursuant to 18 U.S.C. § 2119 and the due process clause of the Fifth Amendment, the facts of this case as applied to Mr. Hadad are unconstitutionally vague.").

To decide this as-applied constitutional challenge, Hadad asks the Court to consider not only the facts raised in his original Motion to Dismiss but also additional facts he includes in the new Motion. *Id.* at 1 (relying on "the facts contained within his motion to dismiss/jurisdiction (¶¶ 1-26) and the following additional facts" laid out on pages 2-3 of ECF No. [29]). Given Hadad's reliance on the foregoing, the undersigned proceeds to summarize the pertinent evidence Hadad proffers in his original Motion to Dismiss, *see* ECF No. [17], along with the additional evidence proffered in the current Motion, *see* ECF No. [29]. According to Hadad, the vehicle involved in the carjacking was a silver Honda Accord that YAR Investments LLC ("YAR Investments") purchased as a salvage vehicle at an insurance sale. *See* ECF No. [17] at 3. At the time YAR Investments purchased the vehicle, it had been deemed a "wreck" or "total loss" and was, therefore, inoperable. *Id.* Because the car was inoperable and not fully assembled, it was shipped on a flatbed truck to Guru in Miramar, Florida, and Guru thereafter reassembled or rebuilt the car. *Id.* Guru then had the car inspected under state inspection laws to ensure it was safe to operate and applied for and received a rebuilt/salvage title for the vehicle. *Id.* On October 11, 2023, Victim 1 purchased the vehicle, financing the transaction through a loan that required a $500 monthly payment. *Id.* at 4. Mid Atlantic loaned the money to Victim 1 with Guru as the guarantor. *Id.* Included among the documents that Victim 1 signed during the vehicle purchase was a pre-repossession agreement in the event he defaulted on the loan. *Id.* at 5. Apparently, Victim 1's November and December monthly payments were returned for insufficient funds, resulting in Mid-Atlantic sending him "NSF" letters. *Id.* Given the default on the loan, Mid Atlantic exercised certain rights under the Auto Contracts Bonus Pool Purchase Agreement that required Guru to repurchase the vehicle for the sum of $12,230.82,[1] making Guru the primary lienholder. *Id.*

---

[1] The proffer of "additional facts" included in the Motion gives a conflicting amount. Hadad now states the sum was "$12,775.83." *See* ECF No. [29] at 3.

Guru, in turn, exercised its rights to repossess the vehicle from Victim 1 and began making efforts to contact him via phone calls and text messages without success. *Id.* To locate the vehicle and repossess it on Guru's behalf, Hadad then went to Victim 1's residence on the morning of December 19, 2023. *Id.* Victim 1 proceeded to drive the vehicle away from the residence and Hadad followed him. *Id.* at 6. At a traffic light, Hadad exited his own vehicle, said something to Victim 1, and ripped off the vehicle's temporary tag. *Id.* As Victim 1 drove off, Hadad continued to follow him until Victim 1 reached the Tri Rail station at which time Victim 1 stopped his car with Hadad directly behind him. *Id.* Hadad then approached the driver-side window, requested the keys, and informed Victim 1 that this was a repossession. *Id.* Victim 1 exited the vehicle with his belongings, and Hadad informed him that he (Hadad) was taking the vehicle. *Id.* After Victim 1 advised that the keys were in the cupholder, Hadad retrieved the keys, removed the car from the keychain, and returned the remaining keys to Victim 1. *Id.* at 6-7. While Victim 1 was removing his personal effects from the trunk, he observed that Hadad had a firearm. *Id.* at 7. The owner of Guru later arrived on scene to take possession of the vehicle and wait for a tow truck. *Id.* As the foregoing occurred, Victim 1 made phone calls to Guru and "the bank" to attempt to rectify the situation, to another unknown individual, and then to 911 to report the carjacking. *Id.* It bears noting that the original Motion to Dismiss attached 13 exhibits, consisting of various contracts, letters, an email, photographs of the temporary tag, among other documents, that Hadad asks the Court to consider in ruling on the as-applied constitutional challenge. *See* ECF No. [17] at 14-55.

In the current Motion, Hadad proffers additional evidence involving Victim 1's sworn deposition testimony during the pendency of a parallel state court criminal proceeding. *See* ECF No. [29] at 2-3. Specifically, he summarizes Victim 1's deposition testimony — but does not provide a copy of the transcript — by explaining that Victim 1 admitted that Guru could repossess

the vehicle for failure to comply with the agreement, that he signed the pre-repossession agreement, that there were insufficient funds in his account during the first two attempted payments, and that Guru attempted to contact him on numerous occasions about the breach of contract, but Victim 1 was non-responsive.  *Id.*  Hadad also repeats his proffer of evidence surrounding Mid Atlantic's enforcement of the contractual provision requiring Guru to pay the financed sum of money and Guru's right to repossess the vehicle.[2]  *Id.* at 3.  Finally, Hadad proffers as "additional facts" that state law, not federal law, governs the repossession of motor vehicles, and that, pursuant to that state law, Hadad set out to repossess the vehicle.  *Id.*

The Government's Response, in turn, argues that Hadad's Motion is flawed from its inception because it asks the Court to decide facts outside the four corners of the Indictment.  *See* ECF No. [35].  Specifically, the Response maintains that, an as-applied challenge requires the application of the underlying facts to decide the issue of dismissal, and as a result, such a challenge falls outside the scope of Federal Rule of Criminal Procedure 12(b)(1).  *Id.* at 2.  Instead, the Response suggests that such an argument is more appropriate pursuant to Federal Rule of Criminal 29 *after* the Parties have presented their evidence to the jury.  *Id.* at 1.  In addition, the Government argues that the Motion fails substantively because the carjacking statute does not require a theft but instead criminalizes the taking of a motor vehicle.  *Id.* at 4.

In his Reply, Hadad reiterates his argument that Congress never intended to criminalize vehicle repossession in the carjacking statute.  *See* ECF No. [45] at 1.  In support of his as-applied challenge, Hadad suggests that the proffered documents and sworn testimony support his version of events, and the Government's failure to dispute those facts with its own evidence, along with its disclosure of a repossession expert, are a tacit concession that these facts are undisputed.  *Id.* at

---

[2] It is unclear to the undersigned whether this proffer is based on Victim 1's deposition testimony or is simply a summary of other evidence.

1-2. Given these purportedly undisputed facts surrounding the repossession, Hadad asks the Court to decide the as-applied challenge now rather than force the parties to trial. *Id.* at 2. Alternatively, Hadad suggests that an evidentiary hearing would potentially save judicial resources, suggesting that the Court, instead of a jury, decide any disputed factual issues necessary to rule on the as-applied challenge. *Id.* at 3. The Motion is now ripe for review.

## II.   LEGAL STANDARDS

### a. Motions to Dismiss Under Rule 12(b)(1)

Federal Rule of Criminal Procedure 12(b)(1) authorizes the district court to resolve before trial "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). The former version of Rule 12(b)(1), previously located in Rule 12(b)(2), similarly allowed courts to decide a motion "'that the court can determine *without a trial of the general issue*.'" *United States v. Pope*, 613 F.3d 1255, 1259 (11th Cir. 2010) (quoting Fed. R. Civ. P. 12(b)(2)) (emphasis in original).[3] With regard to "the general issue," in a criminal case, this is "'defined as evidence relevant to the question of guilt or innocence.'" *Id.* (quoting *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005)). Supreme Court jurisprudence explains that a court can only resolve a pretrial motion to dismiss the indictment if "'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *Id.* (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). On the other hand, Rule 12 does not authorize the disposition of an indictment under a motion to dismiss when a

---

[3] The 2014 Committee Notes to Rule 12 explain that "[t]he language formerly in (b)(2), which provided that 'any defense, objection, or request that the court can determine without trial of the general issue' may be raised by motion before trial, has been relocated [to (b)(1)]" and "[t]he more modern phrase 'trial on the merits' [has been] substituted for the more archaic phrase 'trial of the general issue,'" but "[n]o change in meaning [was] intended." Fed. R. Crim. P. 12, 2014 Committee Notes.

determination of contested facts involving the offense conduct would provide *any* assistance in deciding the issue. *Id.*

With this framework in mind, there are two categories of motions that do not implicate the "trial of the general issue." *Id.* at 1260. The first category consists of those motions that relate to the evidence that may be admitted at trial (such as motions to suppress), the "conduct of and preparation for trial" (such as matters of venue, bills of particulars, discovery, etc.), and motions that dispose of the case without deciding disputed questions of fact (such as some speedy-trial violations). *Id.* As long as a motion does not implicate facts surrounding the question of guilt or innocence, it does not involve the "general issue." *Id.* Regarding the second category of motions, these may involve the "general issue," but they do not require a trial of the "general issue." *Id.* Examples of such motions are those seeking to dismiss an indictment based on the sufficiency of its allegations or those involving pure questions of law. *Id.* And, in one notable exception, courts may consider motions to dismiss that require consideration of evidence outside the four corners of the indictment, but this only arises if: "[1] the operative facts are undisputed, [2] the government fails to object to the district court's consideration of those undisputed facts," and [3] the district court can determine from them that, "'*as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt.'" *Id.* (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994)) (emphasis in original). This limited exception does not apply simply because the government has refused to come forward with evidence to support its case in response to a defendant who presents his or her own proof. *Id.* Rather, any "extra-indictment evidence thus must be undisputed in the sense that it is *agreed* to by the parties — neither side having expressed any objection to its consideration or any objection to its completeness and accuracy." *Id.* at 1261.

It is well settled in the Eleventh Circuit that when a party seeks to dismiss an indictment under Federal Rule of Civil Procedure 12(b), it may only be dismissed "where there is an infirmity of law in the prosecution[,]" but "a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Indeed, going back to former Fifth Circuit law, it is clear that in deciding a motion to dismiss an indictment, a district court cannot pierce the pleadings or make a premature resolution of the indictment's merits. *Id.* As the Eleventh Circuit has explained, "[t]here is no summary judgment procedure in criminal cases." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).

### b. Due Process

Under the Fifth Amendment, "[n]o person shall . . . be deprived of life, liberty or prosperity, without due process of law," and the Government violates one's due process rights when it takes away life, liberty, or prosperity under a criminal law "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 596 (2015). *See also United States v. Hoover*, 635 F. Supp. 3d 1305, 1319 (M.D. Fla. 2022) (quoting *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002) (The doctrine of void-for-vagueness "'requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'"). During a vagueness inquiry, the court must examine the plain language of the statute, looking at "'the meaning of the statute in light of common understanding and practice.'" *Id.* (quoting *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010)).

Relatedly, the rule of lenity or the "strict construction of criminal statutes," "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997). This rule is the "junior version of the vagueness doctrine," *id.* (citations omitted), and under this rule, any meaningful doubt should be resolved in the defendant's favor, *see United States v. Caniff*, 955 F.3d 1183, 1191 (11th Cir. 2020). Courts may also supply judicial gloss on an uncertain statute to provide clarity, but "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.* Each of these concepts — vagueness, the rule of lenity, and judicial gloss — relate to the fair warning requirement of the due process clause, and their touchstone is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 266-67.

## III.  DISCUSSION

After reviewing the Motion, Response, and Reply, and considering the relevant legal standards, I recommend that the Motion be **DENIED**. As explained above, Hadad's Motion asks the Court to examine the facts of the case and then apply them to the statute at issue to determine whether it is vague, but this goes far beyond what Rule 12(b)(1) allows the Court to do at this stage of the proceedings.

"Generally, as-applied constitutional challenges necessarily involve an examination of the facts of the case," *United States v. Farrier*, No. 23-CR-212-TFM, 2024 WL 184451, *3 (S.D. Ala. Jan. 17, 2024), but "as-applied constitutional challenges to statutes . . . are not appropriately raised in pre-trial motions to dismiss." *United States v. Lara-Mondragon*, No. 11-CR-010-RWS-SSC, 2011 WL 13136622, *2 (N.D. Ga. Nov. 7, 2011). The Eleventh Circuit has explained that to

consider such facts would be to consider evidence relevant to the question of guilt or innocence, meaning a trial of the "general issue," which Rule 12(b)(1) does not authorize on a motion to dismiss. *See Pope*, 613 F. 3d at 1261. In *Pope*, the defendant asked the trial court to apply the "facts surrounding the commission of the alleged offense" when deciding his as-applied challenge to the constitutionality of the charged offense, a violation of 18 U.S.C. § 922(g)(9). *Id*. Affirming the district court, the Eleventh Circuit explained that these are "the very facts a court may *not* consider before trial." *Id.* (emphasis in original). *See also United States v. Riquene*, No. 10-CR-227-J-34TEM, 2012 WL 171080, *8 (M.D. Fla. Jan. 20, 2012) ("To the extent [defendant's] as-applied challenge depends on facts and evidence beyond those given in the Indictment, it must be denied prior to trial.").

Here, Hadad asks the Court to undertake an examination of facts outside the Indictment to decide his as-applied challenge. This means that, to decide the issue, the undersigned would be required to make numerous factual findings, starting with how Guru acquired the vehicle in the first instance, Guru's sale of the vehicle to Victim 1 (including review of the related sales records), the financing of the vehicle (including review of the finance documents), the insufficiency of the November and December vehicle payments, Mid Atlantic's exercise of its right to require Guru to repurchase the vehicle, Guru's right to repossess the vehicle, and whether Hadad's actions constituted repossession, among other facts. Given the need for an extensive factual inquiry and analysis, Hadad's motion is premature and cannot be decided at this stage. *See Lara-Mondragon*, 2011 WL 13136622 at *2 (denying motion to dismiss as premature when the as-applied challenge to the 18 U.S.C. § 922(g)(5) charge required the court to determine whether the alien defendant was the father of the three U.S. citizen children, whether the firearm was kept for purposes of

protection of the children, and whether the defendant used the firearm for any illegal purposes, among other facts).

In his Reply, Hadad asks the Court to consider the proffered evidence under *Pope* because, according to him, it is undisputed. Indeed, a limited exception exists under which the trial court may consider extrinsic evidence in deciding whether dismissal is appropriate, but it only applies if: "[1] the operative facts are undisputed, [2] the government fails to object to the district court's consideration of those undisputed facts," and [3] the district court can determine from them that, "'*as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt.'" *Pope*, 613 F.3d at 1260 (quoting *Hall*, 20 F.3d at 1088) (emphasis in original). As to the first prong, it is unclear to the undersigned whether the facts are undisputed. The Government does not address that issue. Instructively, in *Pope*, the Eleventh Circuit explained that this exception does not apply simply because the government refused to come forward with evidence to support its case in response to a defendant who presents his own proof. *Id.*

The critical inquiry is whether the undisputed extra-indictment evidence is *agreed* to by the parties, meaning "neither side expressed any objection to its consideration or any objection to its completeness and accuracy." *Id.* at 1261. The defendant in *Pope* similarly argued that the government tacitly acquiesced to his proffered evidence even though the government expressly argued that a motion challenging an indictment should only be decided on the face of the allegations therein. 613 F.3d at 1262. Under this scenario, the Eleventh Circuit concluded that "the government *did* contest the district court's ability to resolve Mr. Pope's motion on the basis of facts outside his indictment." *Id.* (emphasis in original). Similarly, here, the Government vehemently objects to the Court's consideration of Hadad's proffer of facts in deciding the Motion. *See* ECF No. [35] at 1-3. That is the Government's main argument in its Response. *Id.* Without

an agreement from the Government, the limited exception in *Pope* does not apply, and the Court cannot consider Hadad's proffered facts over the Government's objection.

While the issues raised in the Motion are due to be denied, this is because Hadad's as-applied challenge is premature. He can certainly raise his challenge following the presentation of evidence to the jury under Federal Rule of Criminal Procedure 29. At such time, the Court will be free to consider the facts and determine the constitutional question. *See Farrier*, 2024 WL 184451 at *3 ("Farrier's argument [requiring the Court to go well outside the facts presented in the indictment] is not appropriate for a pretrial motion to dismiss, but nothing in this opinion precludes that he may raise the issue after the presentation of evidence at trial"); *Walton*, 2018 WL 7021860 at *4, n.5 ("To the extent that they are asserting an as-applied challenge to the statute, the procedurally proper time to raise such a challenge would be at trial after the close of the government's case through a Rule 29 motion rather than a pretrial motion to dismiss under Rule 12"). At this juncture, however, the Court cannot undertake the fact-based analysis that Hadad requests.

The undersigned notes that, even though Hadad couches his as-applied challenge as one involving the vagueness doctrine by arguing that the carjacking statute does not contemplate a taking through repossession or a taking because one has the right of possession, the outcome here is the same as under the above Rule 12(b)(1) analysis. He still asks the Court to determine whether the taking was the result of a repossession, the resolution of which involves facts that go outside the allegations of the Indictment. Regardless of whether the undersigned views the issue through the lens of a motion to dismiss under Rule 12(b)(1) or an as-applied challenge under the void-for-vagueness doctrine, the result is no different because the Court cannot consider facts beyond those in the Indictment when ruling on the Motion. *See Hoover*, 625 F. Supp. 3d at 1320 (finding that a

Case 1:24-cr-20220-KMM Document 48 Entered on FLSD Docket 09/26/2024 Page 13 of 15

CASE NO. 24-CR-20220-MOORE/Elfenbein

defendant's vagueness challenge was an issue of fact for the jury because it required resolution of whether the device at issue constituted a machine gun); *United States v. Walton,* No. 16-CR-145-TWT-JKL, 2018 WL 7021860, *4, n.5 (N.D. Ga. Nov. 5, 2018) ("To resolve an as-applied void-for-vagueness challenge using this conduct-based approach, the Court would have to either make factual findings relating to the charged conduct prior to trial, or, alternatively, employ some sort of procedural mechanism similar to summary judgment, where the Court would view the facts in the light most favorable to one of the parties. The Court is not authorized to do either of those things."). Even when specifically analyzing a void-for-vagueness challenge, the Eleventh Circuit and other courts in this Circuit have suggested that such a challenge in a motion to dismiss is premature and should be decided under Rule 29. *See id.*; *see also United States v. Ferguson*, 142 F. Supp. 2d 1350, 1355 (S.D. Fla. 2000) (citing *United States v. Baker*, 19 F.3d 605 (11th Cir. 1994)).

The undersigned also notes that, in his Motion, Hadad cited to several cases to support his as-applied vagueness challenge, but none of them stand for the proposition that this Court can consider extra-indictment evidence when deciding that issue on a motion to dismiss (subject to the limited exception discussed above in *Pope*). Although the cases on which Hadad relies analyze the principle of vagueness and the rule of lenity, applying these concepts to various statutes and fact patterns, the cases were in a procedurally distinct posture with a developed factual record. *See e.g. Johnson*, 576 U.S. at 594-606 (finding that the residual clause of 18 U.S.C. § 924(e)(2)(B) was unconstitutionally vague but deciding the issue following the defendant's guilty plea and sentencing, not on a motion to dismiss the indictment); *Lanier*, 520 U.S. at 262 (analyzing whether the particular conduct fell within the range of criminal liability under 18 U.S.C. § 242 following a jury trial); *United States v. Skilling*, 561 U.S. 358, 412 (2010) (analyzing the doctrine of vagueness

and the rule of lenity as applied to 18 U.S.C. § 1346 following a jury trial and discussing the government's theory of prosecution and trial evidence when deciding the constitutional challenge); *Caniff*, 955 F.3d at 1193 (applying the rule of lenity to the trial evidence and holding there was "insufficient evidence for the *jury* to find" that the defendant's private messages to a minor were "'notice[s]'" "'mad[e]'" within the meaning of 18 U.S.C. § 2551(c)(1)") (emphasis added).  As controlling authority in this Circuit precludes the Court from considering Hadad's proffered evidence to determine the as-applied constitutional challenge on vagueness grounds *at this time*, Hadad's second Motion to Dismiss is due to be denied.

### III.  CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that Defendant Erik Hadad's Motion to Dismiss, **ECF No. [29]**, be **DENIED**.

Given the upcoming trial date of October 7, 2024 with calendar call on October 3, 2024, the parties will have **THREE (3) days** from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.[4]  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

---

[4] *See United States v. Leonard*, No. 18-CR-484, 2019 WL 4401264, *6, n.3 (March 27, 2019) (giving the parties less than 14 days to file objections to the report and recommendation given the proximity of the trial date).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on September 26, 2024.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record