**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CR-20220-MOORE/Elfenbein

**UNITED STATES OF AMERICA**,

v.

**ERIK HADAD**,

      Defendant.

_____/

<u>**OMNIBUS ORDER**</u>

     **THIS CAUSE** is before the Court on the Government's Motion in Limine to Preclude Improper Defense Evidence, Cross Examination, and Jury Nullification Defenses (the "Motion in Limine"), ECF No. [28], and Defendant, Erik Hadad's (the "Defendant") Motion to Exclude the Testimony of Government's Proposed Expert Witness (the "*Daubert* Motion"), ECF No. [46].  The Honorable K. Michael Moore referred this case to me to take all necessary and proper action as required by law and/or to submit a Report and Recommendation regarding all matters and pre-trial motions, except for motions for continuance of trial.  *See* ECF No. [10].  For the reasons explained below, the Motion in Limine, ECF No. [28], is **GRANTED in part and DENIED in part** and the *Daubert* Motion, ECF No. [46], is **DENIED**.

**I.     BACKGROUND**

     The Indictment charges Defendant with carjacking, in violation of 18 U.S.C. § 2119(1), and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  *See* ECF No. [3].  In preparation for the upcoming trial before the Honorable K. Michael Moore, the Government filed a Motion in Limine seeking to preclude Defendant from presenting evidence on eight issues, explained below, while Defendant has separately filed a

*Daubert* Motion seeking to preclude the Government from calling its repossession expert, Mark Lacek.  The Parties have each filed their respective responses in opposition to and replies in support of the Motion in Limine and *Daubert* Motion, *see* ECF No. [30], [38], [50] and [53], and the Court heard extensive oral argument on the issues.

## II.    LEGAL STANDARDS

### a.   Motion in Limine

In a motion in limine, a party may present the trial court with pretrial issues regarding admissibility of evidence likely to be presented at trial.  *Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2015 WL 12085846, at *1 (S.D. Fla. Mar. 4, 2015) (citing *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013)).  "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Id.*

Notably, "[m]otions in limine are disfavored," and "[i]n fairness to the parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds."  *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010).  For this reason, when the evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.*  Importantly, an in limine ruling "remains subject to reconsideration by the court throughout the trial," and the parties may renew their objections as appropriate. *Id.* (quoting *Stewart v. Hooters of Am., Inc.*, No. 8:04–cv–40–T–17–MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007)).

### b. *Daubert* Motions

Federal Rule of Evidence 702 governs the admission of expert witness testimony.  It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702 requires that district courts perform the "gatekeeping" function when deciding the admissibility of scientific or technical expert evidence.  *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 n.7 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999)).  The objective of the gatekeeping function is "'to ensure the reliability and relevancy of expert testimony'" and "'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  *Id.* (quoting *Daubert*, 526 U.S. at 152).

When deciding the admissibility of expert witness testimony under Rule 702, district courts engage in a three-part inquiry: (1) whether the expert is "qualified to testify competently regarding the matters he intends to address" (the qualifications inquiry); (2) whether "the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*" (the reliability inquiry); and (3) whether "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue" (the helpfulness inquiry).  *Id.*  "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the

proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case." *Id.*

## III.   DISCUSSION

### a.  Motion in Limine

The Government's Motion in Limine seeks to preclude Defendant from raising the following eight evidentiary issues at trial: (1) a justification defense; (2) references to punishment or the mandatory minimum statutory penalty; (3) pure nullification issues, such asking the jury to feel sympathy for Defendant, suggesting the jurors take the law into their own hands, or suggesting the jury send a message to the victim for his failure to make car payments; (4) a self-help defense; (5) the pre-repossession agreement; (6) the salvage status of the 2020 Honda; (7) the victim's prior repossession of another vehicle; (8) the victim's failure to obtain a permanent license plate for the vehicle; and (9) the victim's continued possession of the vehicle following the alleged carjacking. In his Response, Defendant did not address issues (1), (2), or (3), and during oral argument, Defendant agreed that he does not oppose the Motion in Limine on these three issues.  Accordingly, as to issues (1), (2), and (3), the Motion in Limine is **GRANTED  by agreement** as follows: (1) Defendant will not raise a justification defense; (2) Defendant will not refer to punishment or any mandatory minimum penalty; and (3) Defendant will not raise any nullification arguments in which he asks the jury to feel sympathy for him, take the law into their own hands, or send a message to the victim for not making his car payments.

### i.    The Self-Help Defense and Pre-repossession Agreement

The Government seeks to preclude Defendant from raising any "self-help" arguments, such as he thought he was doing his job when he took the car from the victim, arguing that Defendant's subjective motivation when he acquired the vehicle is not relevant to the taking element of

carjacking.  *See* ECF No. [28] at 9-10.  Relatedly, the Government also argues that Defendant should not be allowed to introduce the pre-repossession agreement because he will use that to argue he had authority to repossess the vehicle at the time of the alleged carjacking and such evidence would confuse the jury and be unfairly prejudicial.  *Id.* at 14-15.

In his Response, Defendant does not suggest he would introduce such evidence to negate the taking element of carjacking, but instead argues that he should be allowed to introduce evidence of the repossession to challenge whether he intended to cause death or serious bodily harm.  *See* ECF No. [30] at 7-8.  Regarding the pre-repossession agreement, Defendant argues that it likewise negates his criminal intent, *id.* at 10, and at the hearing, he further noted that it explains why he was on the scene at the time of the purported carjacking.

At the hearing, the Government's position on these topics evolved by arguing (1) that the scienter element of carjacking – intent to cause death or serious bodily harm – is not based on Defendant's subjective intent; and (2) that it is undisputed that Guru, Defendant's employer, was not entitled to repossess the vehicle, making such evidence irrelevant and creating a risk of confusing the jury.  As to the latter point, Defendant clarified at the hearing that his theory is that Guru (and consequently Defendant) believed it had a right to repossess at the time, but he does not intend to argue that the repossession itself was rightful or wrongful.

The Court starts its analysis with the elements of the carjacking offense taken from the Eleventh Circuit Criminal Jury Pattern Instructions, which requires evidence beyond a reasonable doubt that: (1) the Defendant took or attempted to take a motor vehicle from or in the presence of another; (2) the Defendant did so by force and violence or by intimidation;  (3) "the motor vehicle had previously been transported, shipped, or received in interstate or foreign commerce;" and (4) "the Defendant intended to cause death or serious bodily harm when the Defendant took the motor

vehicle." *See* Eleventh Circuit Criminal Jury Pattern Instructions, 078.  As for the fourth element, the instructions explain that "[t]o decide whether the Defendant 'intended to cause death or serious bodily harm,' you must objectively judge the Defendant's conduct as shown by the evidence and from what someone in the victim's position might reasonably conclude."  When deciding "[t]he intent of the defendant[, it] 'is not to be measured by the secret motive of the actor, or some undisclosed purpose merely to frighten, not to hurt,' but rather [it] 'is to be judged objectively from the visible conduct of the actor and what one in the position of the victim might reasonably conclude.'" *United States v. Guilbert*, 692 F.2d 1340, 1344 (11th Cir. 1982) (quoting *Shaffer v. United States,* 308 F.2d 654, 655 (5th Cir. 1962) (per curiam), *cert. denied,* 373 U.S. 939 (1963)).[1]

In his proffer of evidence, Defendant explains that, at the time of the alleged carjacking at the Tri Rail station, he "got out of his car and walked up to the driver's window of the Honda," which was down, and "asked for the key and told [the victim] this was a repossession."  ECF No. [17] at 6.[2]  This proffer suggests Defendant intends to present some objective evidence — through his visible actions in requesting the keys and informing the victim of the repossession — that he was there to repossess the vehicle.  And such evidence of his actions, coupled with what one in the position of the victim might reasonably conclude, can be considered when deciding whether Defendant intended to cause death or serious bodily harm.  For that reason, the Court cannot conclude that such evidence of "self-help" is irrelevant to the issue of Defendant's *mens rea*.  To the extent the Motion in Limine seeks to preclude Defendant from presenting the foregoing "self-help" evidence of Defendant's conduct and actions at the time of the alleged carjacking to argue the intent element, the request is denied.  With that said, Defendant's subjective undisclosed intent

---

[1] Instruction 078 discusses this decision when addressing the *means rea* element of carjacking.

[2] In his Response, Defendant relies upon the facts he proffered in his motions to dismiss at ECF Nos. [17] and [29].

is not relevant to the jury's calculus on the question of intent to cause death or serious bodily harm at the time of the alleged carjacking.  *See Guilbert*, 692 F.2d at 1344 (internal citations omitted); Eleventh Circuit Criminal Jury Pattern Instructions, 078.  Further, there is no dispute between the Parties as to whether the *taking* element of carjacking has a scienter requirement; they both agree it does not.  Accordingly, Defendant will not be allowed to use the self-help defense to argue that he did not have the criminal intent to *take* the vehicle.

As for the pre-repossession agreement, the Court concludes that such evidence may have some relevance and cannot be excluded at this time.  At the hearing, the Government proffered that it intends to admit evidence, through its first witness, of the victim's vehicle purchase, including numerous purchase and finance documents the victim signed.  The pre-repossession agreement is one of many documents signed during the purchase.  In addition, the Government does not dispute that the pre-repossession agreement informed the victim that Guru may repossess the vehicle if he fails to make the required payments or that the jury will learn that Defendant was there to repossess the car.  The Court cannot conclude that this pre-repossession agreement is irrelevant for two reasons: (1) the Government's intent to admit the purchase documents the victim signed at the time of the transaction opens the door to the admission of the pre-repossession agreement as one of the documents the victim signed during the transaction, and (2) the pre-repossession agreement provides context for why Defendant approached the victim,[3] meaning this was not some random encounter — a fact that the Government concedes will be discussed at trial. Based on the Parties' proffers and arguments at the hearing, the Court cannot conclude in limine that this document is irrelevant and, therefore, inadmissible.  However, the Court agrees that this agreement should not be admitted for the purpose of negating criminal intent.  As explained above,

---

[3] This assumes Defendant can first establish that he knew about the existence of the pre-repossession agreement.

the intent element — whether Defendant intended to cause death or serious bodily harm — is measured "objectively from the visible conduct of the actor and what one in the position of the victim might reasonably conclude,'" and not by the subjective motivation of Defendant.  *Guilbert*, 692 F.2d at 1344 (internal citations omitted).

Regarding the self-help defense and the pre-repossession agreement, the Motion in Limine is **GRANTED in part and DENIED in part** as explained above.

### ii.    The Salvage Status of the 2020 Honda

Next, the Government seeks to exclude evidence regarding the salvage history of the 2020 Honda involved in the alleged carjacking because it is irrelevant and any probative value is substantially outweighed by the danger of confusing the issues and misleading the jury.  For context, according to Defendant's factual proffer, *see* ECF No. [17], after this vehicle was fully assembled, it was wrecked in a car accident and then transported on a flatbed from North Carolina to Florida at which time it was repaired.  There is no evidence the vehicle left Florida following its restoration.  Defendant seeks to introduce evidence of the vehicle's salvage history to negate the interstate element of carjacking — whether "the motor vehicle had previously been transported, shipped, or received in interstate or foreign commerce."  *See* Eleventh Circuit Criminal Jury Pattern Instructions, 078.  Defendant does not deny that the Honda was transported in interstate commerce when it left the factory in Ohio and crossed state lines to North Carolina.  Instead, he argues that this car was no longer a "motor vehicle" because of these intervening events and did not become a "motor vehicle" again until it was repaired, reassembled, and fully operable in Florida.

To prove this element, "[t]he Government only has to prove that the vehicle actually moved in interstate or foreign commerce," meaning it moved "between any two states or between the

United States and a foreign country." *Id.* The jury instructions, however, do not define the term "motor vehicle." To support his position that a "motor vehicle" means a "completely assembled vehicle of some sort," *see* ECF No. [30] at 9, Defendant directs the Court to an Eighth Circuit decision, *United States v. Johnson*, 56 F.3d 947 (8th Cir. 1995).[4] The Eighth Circuit appears to be the only circuit court to have analyzed the definition of "motor vehicle" within the context of the carjacking statute, 18 U.S.C. § 2119. In *Johnson*, the car at issue was assembled in Kansas City, Missouri, and there was no evidence the owner had ever driven the car outside of Missouri. 56 F.3d at 956. The question on appeal was whether the interstate element was satisfied when "the automobile's parts traveled in interstate commerce prior to assembly but the completed automobile itself *never* traveled in interstate commerce." *Id.* (emphasis added). Instructively, the appellate court explained that the language in the interstate element of carjacking "requires *nothing more* than a showing that the car, *at some time*, has been in interstate commerce." *Id.* (emphasis added). Analyzing the definition of "motor vehicle," the *Johnson* court concluded that Congress intended to limit carjacking to instances where "a fully assembled 'motor vehicle' has been transported in interstate commerce rather than including circumstances where either the motor vehicle or the motor vehicle's *parts*, <u>prior to assembly</u>, moved in interstate commerce." *Id.* at 957 (italics in original, underline added). As there was no evidence that the "*completed* motor vehicle had *ever* moved in interstate commerce," the appellate court concluded that the government could not prove the interstate element. *Id.*(emphasis added).

In this case, the Parties agreed at the hearing that the 2020 Honda was a completely assembled automobile that traveled from the factory in Ohio to North Carolina. Defendant instead

---

[4] At the hearing, Defendant also directed the Court to a district court decision from the Eastern District of Michigan, *United States v. Gamble*, 939 F. Supp. 569 (E.D. Mich. 1996). The Court has reviewed that decision, which relies on *Johnson*, and finds that it does not support Defendant's position for the same reasons *Johnson* does not support it.

argues that the car accident was an intervening event that caused this Honda to cease being a "motor vehicle" under the carjacking statute, and it did not become a "motor vehicle" again until it arrived in Florida and was repaired.  Defendant's argument is certainly novel, but his reliance on *Johnson* does not support this argument, and Defendant does not cite any case law that supports his interpretation of the term "motor vehicle."  *Johnson* states that, as long as the vehicle is fully assembled and then crosses state lines "at some time," the interstate element is satisfied.  *Johnson* does not state that a vehicle, once fully assembled, ceases to be a motor vehicle simply because it becomes inoperable.  If Defendant were to suggest otherwise to the jury, it would be misleading. Based on the foregoing, the Court finds that the vehicle's salvage status, meaning the circumstances of its post-assembly wreck and repairs/reassembly, are not relevant to the question of whether it is a "motor vehicle" for purposes of the interstate element.  To the extent the evidence may have some relevance, the danger of confusing the issues and misleading the jury substantially outweighs its probative value.  On this issue, the Motion in Limine is **GRANTED**.

### iii.    The Victim's Prior Auto Repossession

The Government also seeks to preclude Defendant from presenting evidence that the victim previously had a car repossessed, arguing that such evidence is inadmissible under Federal Rules of Evidence 404 and 608.  Defendant, in turn, seeks to admit this evidence to impeach the victim's character for truthfulness under Rule 608 but does not seek to admit it under Rule 404.  At the hearing, Defendant argued that this evidence is probative of the victim's character for truthfulness because he previously signed a contract to purchase a vehicle that he knew he could not fulfill.

Federal Rule of Evidence 608(b) states:

(b) Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But

the court may, on cross-examination, allow them to be inquired into *if they are probative of the character for truthfulness or untruthfulness* of:

> (1) the witness; or
>
> (2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b) (emphasis added).

Interpreting Rule 608(b), the Eleventh Circuit has explained that "[a]cts probative of untruthfulness . . . include such acts as forgery, perjury, and fraud." *Ad-Vantage Tel. Directory Consultants v. GTE Directories Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994) (citing 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 608[5] at 608–45 to 608–46 (1994)).  By contrast, acts such as seeking to discharge one's debts in bankruptcy or engaging in ethically questionable conduct do "not show a disregard for the truth that would cast doubt on a witness's veracity."  *Id.* Similarly, courts in this Circuit have found that disciplinary reports, *see Petersen v. Smith*, 762 F. App'x 585, 589 (11th Cir. 2019), and crimes like theft, robbery, or shoplifting are not probative of a witness's character for truthfulness, *see Blake v. Batmasian*, No. 15-81222-CIV, 2017 WL 657767, at *2 (S.D. Fla. Feb. 15, 2017) (citing *United States v. Farmer,* 923 F.2d 1557, 1567 (11th Cir. 1991)).

In this case, the victim's prior repossession of a motor vehicle is not akin to acts such as forgery, perjury, or fraud that would be probative of truthfulness.  His inability to make his car payments, which led to the prior vehicle repossession, is more akin to the situation in which an individual cannot pay his or her debts and seeks to discharge those debts through the bankruptcy process, which the Eleventh Circuit expressly found is not probative of a witness's character for truthfulness.  Accordingly, such evidence is inadmissible under Rule 608(b) and the Government's Motion in Limine on this issue is **GRANTED**.

### iv.     The Permanent License Plate Issue

Similarly, the Government asks the Court to exclude evidence of the victim's failure to procure a permanent license plate as inadmissible under Rule 608(b).  Defendant seeks to admit this evidence under Rule 608(b) as probative of the victim's character for truthfulness because the victim allegedly knew that Guru had the permanent license plate, did not pick it up, and then went to the Department of Motor Vehicles and filled out a form, under oath, stating the tag was lost or stolen when he knew the tag was at Guru.  In short, Defendant seeks to question the victim about a potential lie made under oath to a government agency, but in order to do that, Defendant first needs to establish that the victim knew the tag was not lost or stolen.

The credibility and truthfulness of the victim will, no doubt, be at issue during the trial. In applying Rule 608(b), many courts have considered a witness's prior misrepresentations as bearing on the witness's character for truthfulness. *See Reyes v. Collins & 74th St., Inc.*, No. 16-24362-CIV, 2018 WL 11346740, at *5 (S.D. Fla. Mar. 8, 2018) (finding that a party's lie about his legal history in discovery responses may be admissible to impeach the witness's character for truthfulness under Rule 608(b)); *Lopez-Easterling v. Charter Commc'ns LLC*, No. 2:14-CV-1493-RDP, 2017 WL 6383985, at *2 (N.D. Ala. Feb. 2, 2017) (concluding that the plaintiff's prior lie to her employer about what she did with a package was probative of her character for truthfulness). Without additional information about whether the victim knew the whereabouts of the vehicle tag and what the victim said under oath to the Department of Motor Vehicles, the Court cannot determine whether the victim indeed lied, and without that information, the Court cannot perform the balancing test under Rules 608(b) and 403.  As a result, the Court cannot conclude that the foregoing evidence is "clearly inadmissible on all grounds," requiring that the Court defer on this evidentiary ruling until matters of "foundation, relevancy, and potential prejudice may be resolved

in proper context." *Reyes*, 2018 WL 11346740 at *5 (internal citations omitted).[5]  The

Government's Motion in Limine on this issue is, therefore, **DENIED without prejudice**.

> **v.   The Victim's Continued Possession of the Vehicle**

Finally, the Government moves to preclude Defendant from introducing evidence

regarding the victim's continued possession of the vehicle following the alleged carjacking on

relevance and unfair prejudice grounds.  In his Response, Defendant explained that the evidence

bears on the victim's credibility and, at the hearing, he specifically relied on Rule 608(b) as a basis

to admit this testimony, stating that this goes to the witness's character for truthfulness.  It is unclear

to the Court how this specific instance of conduct — holding onto a car after an alleged carjacking

— has any relationship to the witness's character for truthfulness.  His continued possession of the

vehicle is not an act of forgery, perjury, or fraud, which would be typical Rule 608(b) evidence.

*See Ad-Vantage Tel. Directory Consultants*, 37 F.3d at 1464.  Even to the extent the victim's

continued possession of the vehicle could be characterized as some sort of theft (if he was not

making payments), the Eleventh Circuit has found that crimes like theft, robbery, or shoplifting

are not probative of a witness's character for truthfulness.  *See Blake*, 2017 WL 657767, at *2

(citing *Farmer,* 923 F.2d at 1567).  The act of holding onto the vehicle does not have any

relationship to the victim's character for truthfulness, so the evidence cannot be admitted under

Rule 608(b).

---

[5] It is unclear to the Court whether Defendant intends to offer into evidence the actual application for the lost or stolen tag to prove character for truthfulness.  If so, the Court notes that "there is an 'absolute bar' on extrinsic evidence when 'the sole purpose for offering the evidence [is] to prove the witness'[s] character for veracity.'"  *United States v. Gbenedio*, 95 F.4th 1319, 1334 (11th Cir. 2024) (quoting Fed. R. Evid. 608, advisory committee's notes (2003 amends)).  Simply put, "extrinsic evidence may never be admitted to prove that someone tends to lie." *Id.*

In the Response, Defendant also states this evidence is relevant to show the victim's "motive to lie," ECF No. [30] at 11, so the Court also considers the admissibility of such evidence in the context of Rule 404(b). "Although Rule 404(b) does allow evidence of 'other crimes, wrongs, or acts . . . as proof of motive . . . ,' the word 'motive' as used in the rule does not refer to a motive to testify falsely." *Farmer*, 923 F.2d at 1567 (citing Fed. R. Evid. 404(b); *United States v. Sampol,* 636 F.2d 621, 659 n. 24 (D.C. Cir. 1980) ("'Motive' in the context of Rule 404(b) refers to the motive for the commission of the crime charged.")). Here, assuming this evidence were proof of the victim's motive to lie, Rule 404(b) does not allow its admission as it pertains solely to the motive to commit the crime, not to a motive to testify falsely. As such evidence is not relevant or otherwise admissible under Rules 608(b) or 404(b), the Government's Motion in Limine on this issue is also **GRANTED**.

### b. *Daubert* Motion

The Court next addresses Defendant's *Daubert* Motion, ECF No. [46], which seeks to exclude the Government's expert witness, Mark Lacek ("Mr. Lacek"), challenging his qualifications, the reliability of his opinions, and the helpfulness of his opinions.[6] The Government disclosed Mr. Lacek as an expert "who will testify about industry standards and legal requirements relating to the repossession of motor vehicles in the State of Florida, including with respect to persons who are authorized by law to conduct repossessions[,] and industry standards for issues such as the avoidance of breaching the peace." *See* ECF No. [40] at 3. The Court will address each of Defendant's arguments.

---

[6] The Court heard oral argument on the *Daubert* Motion, but it did not set it for an evidentiary hearing. "Although sometimes helpful, a *Daubert* hearing is not necessary for the Court to fulfill its gatekeeping role of determining whether an expert's testimony meets the requirements set forth in *Daubert.*" *Segev v. Lynn Univ.*, No. 19-CV-81252, 2021 WL 3887813, at *1 (S.D. Fla. July 28, 2021). In this case, an evidentiary hearing would not materially advance the Court's understanding of the proposed expert testimony, so the Court rules on the issues without holding a *Daubert* hearing.

### i.   *Qualifications*

Experts may be qualified in various ways, such as knowledge, skill, experience, training, or education. *Frazier*, 387 F.3d at 1260–61 (citing Fed. R. Evid. 702).  "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."  *Id.*  Indeed, the Committee Note to the 2000 Amendments of Rule 702 acknowledges that the rule does not intend to suggest that experience, standing alone, is an insufficient foundation for expert testimony.  *See* Fed. R. Evid. 702, advisory committee's note (2000 amends.).

In the *Daubert* Motion, Defendant challenges Mr. Lacek's qualifications because (1) he has never testified in a criminal proceeding or been consulted as an expert in a criminal proceeding; (2) of the cases in which he has testified as an expert, only two of them were in Florida and both were in civil matters; and (3) Mr. Lacek fails to list any legal education or familiarity with the current Florida statutes governing motor-vehicle repossessions.  *See* ECF No. [46] at 7.  The Government responds that (1) Rule 702 applies with equal force in criminal and civil cases, so it does not matter whether Mr. Lacek has ever testified in a criminal proceeding; (2) there is no required minimum number of cases in which an expert must testify before he or she can be deemed an expert; and (3) Mr. Lacek is qualified to testify as to matters of repossession.

Addressing the last point first, the Court agrees with the Government that Mr. Lacek is qualified to testify on matters of vehicle repossession.  He has nearly 50 years of experience in the industry, the vast majority of which occurred within the state of Florida.  His curriculum vitae ("CV") reveals that he started working as an automobile repossessor and tow driver in 1975 until 1978 in Beechwood, Ohio.  *See* ECF No. [50-1] at 3.  He then resumed his work as an automobile repossessor from 1981 until 1983 in Denver, Colorado.  *Id.*  Thereafter, from 1983 through 1987,

he worked as an automobile repossessor in Miami, Florida. *Id.* at 2. From 1990 through 2007, he worked in the repossession field involving numerous vehicles, including automobiles, in Clermont, Florida and Lorain, Ohio; and from 2007 to 2023, he engaged in this work exclusively in Clermont, Florida. *Id.* at 1-2. His experience in this field spans decades. According to his CV, he has trained more than 100 repossession agents, has repossessed more than 20,000 "assets," including automobiles, and has served as President of the Florida Association of Licensed Repossessors. *Id.* at 1, 4. He also holds two licenses from the State of Florida as a Recovery Agent. *Id.* Mr. Lacek's extensive experience qualifies him as an expert witness in vehicle repossessions in the state of Florida.

Addressing Defendant's arguments that Mr. Lacek has never testified in a criminal case and his expert witness testimony in Florida is limited to two civil cases, neither of these arguments support the idea that Mr. Lacek is unqualified to render the proposed opinions. As to the first point, which is that he has never testified or been consulted in a criminal case, the Federal Rules of Evidence, including Rule 702, apply to both criminal and civil proceedings. *See* Fed. R. Evid. 1101(b) ("These rules apply in: civil cases and proceedings, including bankruptcy, admiralty, and maritime cases; criminal cases and proceedings; and contempt proceedings, except those in which the court may act summarily."). Rule 702 does not draw any distinction between an expert testifying in a criminal or a civil matter nor does it require prior experience in a criminal case to qualify as an expert in a criminal matter. As to Defendant's second point, which is that Mr. Lacek is not qualified because he has only testified in two Florida civil cases, Rule 702 does not require that a witness have prior expert testimonial experience to qualify as an expert. It allows an individual to be "qualified as an expert by knowledge, skill, experience, training, or education," but noticeably absent is any requirement of qualification by prior testimony. *See Coco Rico, LLC*

CASE NO. 24-CR-20220-MOORE/Elfenbein

*v. Universal Ins. Co.*, No. CV 21-1390 (MEL), 2023 WL 3735108, at *5 (D.P.R. May 30, 2023) ("Nor has Plaintiff pointed to a requirement under Rule 702 or any other legal authority requiring that an expert witness have testified in a certain number of cases before being able to testify as an expert in court."). The Court finds these arguments unpersuasive. Given his extensive experience, the Court concludes that Mr. Lacek is qualified to render the repossession opinions contained in the Government's Notice of Intent to Introduce Expert Testimony, ECF No. [40]. Defendant is free to challenge his qualifications on cross-examination.

      **ii.**   ***Reliability***

      As for the reliability inquiry, the district court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261 (citing *Daubert*, 526 U.S. at 592–93). "For non-scientific expert testimony, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (quoting *Kumho Tire*, 526 U.S. at 152). "A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.'" *Id. See also Quirantes v. State Farm Mut. Auto. Ins. Co.*, No. 20-CV-22078, 2021 WL 4783691, *2 (S.D. Fla. July 13, 2021) (finding that non-scientific opinions based on the expert's personal knowledge and experience were sufficiently reliable); *Decamp v. State Farm Fire & Cas. Co.*, 558 F. Supp. 3d 1196, 1201 (M.D. Fla. Sept. 7, 2021) (finding that expert could rely on his experience in the insurance industry to support his methodology and discuss what he encountered in the industry). When an expert renders a non-scientific opinion based on personal knowledge and experience, the expert "need not have used a particular methodology at arriving at his conclusions."

*Iaffaldano v. Sunwest Mortgage Co.*, No. 17-CV-14222, 2018 WL 310050, *2 (S.D. Fla. Jan. 4, 2018) (agreeing that that the only methodology the insurance industry expert needed when relying on his education and experience was to review the applicable statutes, rules, and regulations to form opinions).

Defendant challenges Mr. Lacek's methodology because the Government fails to show that his expertise in the field of repossession leads to the conclusions in the Notice of Intent to Introduce Expert Witness. *See* ECF No. [46] at 7. The Government, in turn, argues that Mr. Lacek is not presenting scientific expert witness testimony but is instead simply testifying about industry standards involving vehicle repossession in Florida and that such opinions are based on his many years of experience in this field. ECF No. [50] at 14. Upon review of the Government's Notice of Intent to Introduce Expert Witness, ECF No. [40], the Court agrees that Mr. Lacek is not providing any scientific expert witness testimony. Because his testimony relates to industry standards in Florida as it relates to vehicle repossession and the basis for such opinions is his extensive experience in this industry, he need not have a specific methodology to satisfy *Daubert*. His knowledge and experience with the standards within the industry is sufficient to testify about such standards. Accordingly, the Court finds that Mr. Lacek's opinions are sufficiently reliable to be offered at trial.

### iii.    *Helpfulness*

Rule 702 also requires that expert witness testimony assist the trier of fact, meaning it must "'concern[] matters that are beyond the understanding of the average lay person.'" *Decamp*, 558 F. Supp. 3d at 1201 (quoting *Frazier*, 387 F.3d at 1262). When making the helpfulness inquiry, the district court "must 'ensure that the proposed expert testimony is 'relevant to the task at hand' . . . i.e., that it logically advances a material aspect of the proposing party's case.'" *Id.* (quoting

*Allison v. McGhan*, 184 F.3d 1300, 1312 (11th Cir. 1999)).  In other words, the expert opinion must "fit" the pertinent issues in the case.  *Id.*  If it offers nothing more than what the lawyers can argue in closing arguments, it is not helpful to the jury.  *Id.*

In the *Daubert* Motion, Defendant argues that Mr. Lacek's opinions will not be helpful to the jury because "whether the defendant was unlawfully repossessing the car does not matter," and an expert should not be allowed to interpret Florida Statutes when discussing industry standards. *See* ECF No. [46] at 8-9.  The Government argues that Mr. Lacek's testimony is relevant to show that Defendant's conduct went far beyond a typical motor-vehicle repossession and that concepts involving repossession and breach of the peace are not common knowledge to the average juror. *See* ECF No. [50] at 14-15.

As to the first point, the Court finds that Mr. Lacek's proposed expert opinions "fit" with the issues the jury will be asked to decide.  Although Defendant claims in the *Daubert* Motion that the lawfulness of the repossession does not matter, his Motion to Dismiss, ECF No. [29], expressly argued otherwise and discussed the critical nature of this issue to his defense.  Indeed, Defendant argued that: "the core issue in this case is the repossession of the vehicle," *see* ECF No. [45] at 2; "Congress never envisioned that the statute would be used to prosecute the repossession of automobiles," *see* ECF No. [29] at 7-8, and "how can the government indict Mr. Hadad for a violation of 18 U.S.C. § 2119 when Guru had an absolute right to the car," *see id.* at 8.  Thus, to the extent the repossession becomes a feature at trial, Mr. Lacek's opinions would indeed be relevant to the issues the jury is tasked with deciding.

As to the helpfulness of his opinions, which is Defendant's second argument, the Court finds that his opinions will indeed aid the jury in understanding repossessions and related industry standards.  Although an expert cannot "offer legal conclusions or testify to the legal implications

of conduct," an expert can testify about customs and practices within a certain industry and whether a litigant complied with those practices. *Decamp*, 558 F. Supp. 3d at 1202. Such opinions are beyond the common knowledge of jurors and, therefore, helpful. *Id.* (finding that insurance industry expert could testify to customs and practices in the insurance industry as long as he was not testifying as a legal expert and was instead testifying as an insurance expert); *Iaffaldano*, 2018 WL 310050 at *2 (finding that expert's testimony about the defendant's compliance with the applicable rules, regulations, and industry standards will assist the trier of fact and noting that objections to such opinions go to the weight of the evidence and not its admissibility). "Passing references to a legal principle or assumption in an effort to place his [or her] opinions in some sort of context will not justify the outright exclusion of an expert's opinions in its entirety." *See Quirantes*, 2021 WL 4783691 at *3 (concluding that expert can testify about the claims handling process and whether the defendant complied with industry standards). Here, Mr. Lacek is testifying about industry standards, which is not common knowledge and is relevant to the issues in this case, making his opinions helpful to the trier of fact.

With that said, the Court cautions the Government that Mr. Lacek may not offer any legal conclusions at trial as the Court will be the jury's only source of the law. *See Quirantes*, 2021 WL 4783691 at *3 ("However, [a] witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.") (modification in original).

## IV.    CONCLUSION

For the reasons explained above, the Motion in Limine, **ECF No. [28]**, is **GRANTED in part and DENIED in part** and the *Daubert* Motion, **ECF No. [46]**, is **DENIED**.

CASE NO. 24-CR-20220-MOORE/Elfenbein

**DONE AND ORDERED** in Chambers in Miami, Florida on October 2, 2024.

_____

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record

21